UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| United States of America, | No. 2:18-cr-00099-JAM |
|---|---|
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS** |
| Tamaran Edward Bontemps, | |
| Defendant. | |

This matter is before the Court on Defendant Tamaran Edward Bontemps's ("Defendant" or "Bontemps") Motion to Suppress. Mot. to Suppress, ECF No. 16. The Court held an evidentiary hearing on the Motion on October 23, 2018. For the reasons set forth below, the Defendant's motion is denied.

I. FACTUAL BACKGROUND[1]

In the late afternoon on April 18, 2018, Bontemps and three

---

[1] The facts presented are taken from Defendant's Motion papers, the United States' opposition thereto, the exhibits attached to the Motion papers, and the exhibits admitted at the Motion hearing. The detectives' police reports are also supplemented by footage from the detectives' body cameras which the Court had reviewed.

1

of his friends were walking down the sidewalk in Vallejo, California. Vallejo Police Detectives Kevin Barreto and Jarrett are part of Vallejo Police Department's Crime Reduction Team. Barreto Report. Detective Barreto's crime report indicates that he was driving westbound on Robles Way when he observed a bulge in the front pocket of the young man walking in the front of the group, Quinton Mills. Both detectives' reports indicate that the object inside Mr. Mills' pocket appeared to be very heavy, causing the pocket to sag. The reports noted the detectives' beliefs that the object in Mills' pocket was a firearm. Tonn also reported that he saw a bulge on Bontemps's left waist/side area.

The detectives stopped the group, and the four men sat on the sidewalk or curb, as instructed. The young men were quiet, except Bontemps, who verbally challenged the reason for the stop. Early in the encounter, Tonn tased Bontemps. After being tased, Bontemps rolled onto his stomach as instructed, as did two of the other young men. Mills stayed still with his hands up as Barreto removed a gun from the front pocket of Mills' hoodie.

Barreto's report stated that, while Bontemps was sitting on the curb next to Mills, Barreto saw a black object, which he believed to be a gun, inside the left side of Bontemps's sweatshirt. Barreto and Tonn ask Bontemps if he had a gun on him, which Bontemps denied. Barreto cuffed Bontemps and removed a gun from a holster inside Bontemps's sweatshirt. The serial number on Bontemps's gun had been drilled off. Bontemps continued to verbally protest the stop.

Eventually, additional officers arrived at the scene. Tonn

moved Bontemps into the backseat of a police vehicle, taking him to the hospital for medical clearance.  A review of Bontemps's information through the system came back with an outstanding felony warrant for his arrest in Sacramento County.  Bontemps was also on felony probation at the time of the stop.

## II. OPINION

### A. Legal Standard

Bontemps moves to suppress evidence obtained resulting from the seizure and subsequent search, on the grounds that the police did not have reasonable suspicion to seize him.  Mot. at 4.  The Government argues that reasonable, articulable suspicion supported the investigatory stop and protective searches.  Opp'n at 2.

The Fourth Amendment to the Constitution prohibits "unreasonable searches and seizures" by the Government.  United States v. Arvizu, 534 U.S. 266, 273 (2002).  Those protections extend to brief investigatory stops that fall short of arrest.  Id.  An officer need not have probable cause to justify an investigatory stop; instead, the Fourth Amendment is satisfied where there is "reasonable suspicion to believe that criminal activity may be afoot."  Id. (internal quotation marks omitted).  Whether an officer has reasonable suspicion is based on a totality of the circumstances approach where the detaining offer must have had a "particularized and objective basis" for suspecting legal wrongdoing. Id.  "Even in high crime areas, where the possibility that any given individual is armed is significant, Terry requires reasonable, individualized suspicion

before a frisk for weapons can be conducted." Maryland v. Buie, 494 U.S. 325, 334 n.2 (1990).

Relevant considerations in assessing the totality of the circumstances include whether the officer observes "a visible bulge in a person's clothing that could indicate the presence of a weapon"; "sudden movements" suggesting a potential assault or "attempts to reach for an object that was not immediately visible"; "evasive and deceptive responses" to an officer's questions; unnatural hand postures that suggest an effort to conceal a firearm; and whether the officer observes anything during an encounter with the suspect that would dispel any suspicion regarding the suspect's potential involvement in a crime or likelihood of being armed. Thomas v. Dillard, 818 F.3d 864, 877 (9th Cir. 2016), as amended (May 5, 2016); see also United States v. Flatter, 456 F.3d 1154, 1157 (9th Cir. 2006) ("[W]e have given significant weight to an officer's observation of a visible bulge in an individual's clothing that could indicate the presence of a weapon."). Contra United States v. Job, 871 F.3d 852, 861 (9th Cir. 2017) ("But the facts that Job's pants appeared to be 'full of items' and he appeared nervous do not support the conclusion that he was engaged in criminal activity.").

B. Analysis

The United States argues that the detectives had "objectively reasonabl[e], articulable suspicion" to stop Bontemps, based on his "erratic behavior" and "the suspicious object [Detective Tonn] saw in [Bontemps's] sweatshirt." Opp'n at 6. The Court finds that Bontemps's behavior alone did not

justify the detectives' initial seizure.  Here, the stop occurred once the young men began complying with Tonn and Barreto's commands to "stop" and "sit down" on the curb.  See Terry v. Ohio, 392 U.S. 1, 16 (1968) ("It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person.").  At this point, Bontemps's hands were raised, and he was quietly complying with the detectives' requests.  Mot. at 2.

The visible bulge above Bontemps's waist, however, does support this Court's finding that the detectives had an objectively reasonable, articulable suspicion at the stop's inception.  Detective Tonn's report says that he saw "a bulge on [Bontemps's] left waist/side area," and "feared Bontemps was armed."  Tonn Report.  At a hearing on October 23, Detective Tonn testified that, as the detectives were going westbound on Robles Drive, he could see the bulge in Bontemps's jacket from the car.  Tonn explained that, based on his training and experience, he believed Bontemps was carrying a firearm.  Detective Barreto testified that he turned on his bodycam shortly before exiting the patrol vehicle.  The video from his bodycam confirms that there was a bulge on the left side of Bontemps's jacket, and that the bulge was visible from inside the patrol car.

In California, it is a crime to "carr[y] a loaded firearm on the person or in a vehicle while in any public place or on any public street."  Cal. Penal Code § 25850.  Because Detective Tonn believed the bulge in Bontemps's jacket was a firearm, he had "reasonable suspicion to believe that criminal activity may

5

be afoot." See Arvizu, 534 U.S. at 273. Accordingly, the Court finds that the detectives' investigatory stop of Mr. Bontemps was constitutional.

### III.  ORDER

For the reasons set forth above, the Court DENIES Plaintiff's Motion to Suppress.

IT IS SO ORDERED.

Dated: October 29, 2018

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE